**In re Bruce S. GARDNER f/d/b/a Couture & Gardner, Debtor.**

**Bankruptcy Nos. 185–00041, C7–50804.**

United States Bankruptcy Court, D. Maine.

Feb. 5, 1986.

Robert J. Daviau, Daviau, Jabar & Batten, Waterville, Me., for creditor Andrew Couture.

John E. Nale, Nale & Nale, Waterville, Me., for creditor George F. Terry, III.

Jonathan Hull, Damariscotta, Me., for debtor.

## MEMORANDUM DECISION

FREDERICK A. JOHNSON, Bankruptcy Judge.

The interesting issue presented in this proceeding is whether an agreement to settle a pre-filing state court negligence action is a reaffirmation agreement subject to the requirements of 11 U.S.C. § 524(c), or is a post-filing agreement for new consideration. The court concludes that the agreement is a reaffirmation which does not meet the requirements of Section 524(c) of the Code and is not enforceable against the debtor.

Debtor filed a chapter 7 petition on February 21, 1985. At that time, debtor and debtor's partnership, Couture and Gardner, CPA, were defendants in a negligence/malpractice action brought by plaintiff, George Terry. Couture and Gardner had served as personal accountants for plaintiff for many years. In late 1981, the partnership provided investment advice to Mr. Terry, who claims that he suffered financial losses of $69,200 as a result of that advice. Mr. Terry filed an unsecured proof of claim for this amount with this court.

On April 11, 1985, this court granted relief from stay for the limited purpose of obtaining a final judgment in State Court which would be payable by debtor's malpractice insurance carrier.

The malpractice action came on for trial in state court on July 17, 1985. The debtor was subpoenaed as a witness and appeared without counsel. After a jury was drawn settlement negotiations were held by plaintiff's attorney, John E. Nale, Esq. and Robert J. Daviau, Esq., who represented debtor's former partner. These negotiations left the parties $4,500 apart. At this point the debtor offered to pay the $4,500.00. He placed $1,500 in escrow with Mr. Daviau and agreed to sign a note for the $3,000 balance. The debtor called his lawyer from the courthouse to tell him what he was doing. His lawyer advised him that what he proposed to do was "improper."

The debtor testified that he was very distressed about the state court proceeding. Although he was subpoenaed as a witness he was a named defendant and was required to participate in the trial. He participated in the selection of a jury and accompanied the lawyers "two or three times" to the Judge's Chambers for conferences. He stated that he was also concerned about what effect a jury verdict of negligence would have on his future as an accountant. He also felt an obligation to his former partner. He felt like a "bumbling idiot" and just "wanted to get out of there."

For two or three days after the settlement the debtor thought about what he had done. He contacted his lawyer who again advised him that the proceedings at the courthouse were improper. The debtor then decided to rescind his agreement and demand return of the $1,500 held in escrow. The promissory note in the amount of $3,000 was never signed.

Despite numerous demands by the debtor and his attorney Mr. Daviau has refused to return the $1,500 held by him in escrow and has demanded that the debtor sign the $3,000 promissory note as he agreed to do. Daviau's position is supported by Mr. Nale. They argue that the debtor voluntarily agreed to pay $4,500 in order to settle the case and received new consideration for the agreement.

Mr. Daviau and Mr. Nale may be correct; the agreement may have been voluntary and some new consideration may have been received. But, being correct avails them nothing. Section 524(c) of the Code provides that any agreement between

the plaintiff Terry and the debtor "the consideration for which, in whole *or in part* is based upon a debt that is dischargeable...." must comply with section 524(c). Even though the debtor may have received some post filing consideration, at least part of the consideration for the agreement is based upon the dischargeable debt.

Section 524(c), as pertinent, requires that:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part; is based upon a debt that is dischargeable ... is enforceable ... only if—...
>
> (2) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claims;
>
> (3) such agreement has been filed with the court ...
>
> (6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement....

In enacting these reaffirmation rules, Congress attempted to preserve the fresh start goal of the bankruptcy laws and insure that "voluntary" reaffirmation agreements were truly voluntary. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 162–164, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, at 6123–6125.

■ Because of the danger that creditors may coerce debtors into undesireable reaffirmation agreements, the language of section 524(c) must be strictly construed. *See In re Roth,* 38 B.R. 531 (Bankr.N.D.Ill. E.D.1984), *aff'd* 43 B.R. 484 (Bankr.N.D.Ill. E.D.1984); *In re Farmer,* 13 B.R. 319 (Bankr.M.D.Fla.1981); *In re Miller,* 13 B.R. 697 (Bankr.E.D.Pa.1981); *In re Stephens,* 2 B.R. 365 (Bankr.N.D.Ohio 1980).

There is no evidence that either Mr. Daviau or Mr. Nale executed any pressure on the debtor to participate in the settlement agreement. Lack of such pressure, however, makes no difference here. The agreement must comply with Section 524(c) to be enforceable.

An appropriate order will be entered.