**In re Stephen N. GETZOFF and Kay Getzoff, Debtors.**

**REPUBLIC BANK OF CALIFORNIA, N.A., fka SafraBank California, Appellant,**

v.

**Stephen N. GETZOFF, Appellee.**

**BAP No. CC–94–2368–MeSHa. Bankruptcy No. LA 92–24707 TD. Adv. No. 94–02623.**

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted March 21, 1995.

Decided April 21, 1995.

Elissa D. Miller, Los Angeles, CA, for appellant.

Steven L. Crane, Los Angeles, CA, for appellee.

Before MEYERS, SULLIVAN [1] and HAGAN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

The bankruptcy court held that a guaranty executed postpetition was invalid under Section 524 of the Bankruptcy Code because it was based on a discharged debt. The creditor appeals from the summary judgment entered against it.

We **AFFIRM.**

### II

### FACTS

On November 20, 1991, Getzoff Accountancy Corporation ("GAC") signed a promissory note and obtained a loan from SafraBank California, now known as Republic Bank of California ("Bank"). The note called for monthly payments of interest only, with the entire principal balance of $250,000 due and payable on May 20, 1992.

1. Honorable Donal D. Sullivan, Chief Bankruptcy Judge for the District of Oregon, sitting by designation.

On the same day the note was executed, Stephen Getzoff ("Getzoff"), the sole owner of GAC, executed a continuing guaranty of GAC's obligations under the note ("First Guaranty"). Under the First Guaranty, Getzoff promised to pay "[a]ny and all indebtedness" of GAC to the Bank. The First Guaranty stated:

> The word "indebtedness" is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers or any one or more of them, heretofore, now, or hereafter made, incurred or created, whether voluntary or involuntary and however arising, whether direct or acquired by Bank, by assignment or succession, whether due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined....

The First Guaranty made Getzoff liable for up to $250,000 in principal, plus interest and other charges without limitation.

Getzoff and his wife filed a Chapter 7 bankruptcy petition on April 13, 1992.

On May 20, 1992, the Bank and GAC entered into an agreement under which the principal was reduced to $213,075.93 (the amount which had not been paid) and the loan was extended. The agreement was evidenced by a new note and provided for payment of the principal and interest in 24 monthly installments of not less than $10,000, commencing on June 20, 1992. No additional funds were advanced. The interest rate was the same for both the first and second notes.

On the date the new note was executed, Getzoff signed another guaranty ("Second Guaranty"), guaranteeing the new obligation of GAC. The Second Guaranty was executed on a form identical to that used for the First Guaranty.

In December 1992, the Bank asked Getzoff to execute a reaffirmation agreement in support of the Second Guaranty. Getzoff did not comply with this request.

GAC made payments on the new note until July 1993. In January 1994, the Bank and GAC agreed to stipulate to a judgment allowing GAC to extend the date for repayment of the note until April 1998. After the documents were prepared, Getzoff claimed for the first time that his obligation on the Second Guaranty had been discharged in bankruptcy.

On June 28, 1994, the Bank filed a complaint for declaratory relief, seeking a declaration from the bankruptcy court that the Second Guaranty was a postpetition obligation of the Debtor which had not been discharged in bankruptcy. Getzoff answered the complaint and both parties filed motions for summary judgment.

After briefing and argument, on October 24, 1994 the bankruptcy court entered an order granting summary judgment in Getzoff's favor. The court found that the Bank had given additional consideration in exchange for the Second Guaranty. Nonetheless, the court held that Getzoff's First Guaranty was a dischargeable debt, and that execution of the Second Guaranty postpetition was an improper attempt to reaffirm the discharged debt without complying with Section 524(c) and (d) of the Bankruptcy Code. The Bank appeals from the summary judgment order.

## III

## STANDARD OF REVIEW

Summary judgments are reviewed *de novo*. *In re Florida*, 164 B.R. 636, 639 (9th Cir. BAP 1994).

## IV

## DISCUSSION

Subject to certain exceptions enumerated in Section 523, Section 727 discharges a debtor from all debts that have arisen before the date of the order for relief. *In re Price*, 871 F.2d 97, 98 (9th Cir.1989). Section 524(a) permanently enjoins all creditor actions to collect debts discharged under Section 727. *In re Poule*, 91 B.R. 83, 87 (9th Cir. BAP 1988). However, a debtor may voluntarily repay a discharged debt. 11 U.S.C. § 524(f). *See In re Kroeger Properties and Development, Inc.*, 57 B.R. 821, 823 n. 3 (9th Cir. BAP 1986).

■ The debtor also may enter into an agreement with a creditor to reaffirm an otherwise dischargeable debt. The agreement will be binding only if made in compliance with Section 524(c) and (d). *In re Bowling,* 116 B.R. 659, 663 (S.Ind.1990). *See In re Daily,* 47 F.3d 365, 367 (9th Cir.1995). Pursuant to Section 524(c) and (d), there are five requirements that must be fulfilled in order to properly reaffirm a previously discharged debt: (1) the agreement must be made prior to discharge; (2) the agreement must advise the debtor that the reaffirmation may be rescinded up to sixty days after it is filed; (3) the agreement must be filed with the court; (4) the debtor cannot already have rescinded the agreement within the proper time frame; and (5) the agreement must be in the best interest of the debtor. *In re Heirholzer,* 170 B.R. 938, 940 (N.Ohio 1994).

The reaffirmation rules are intended to protect debtors from compromising their fresh start by making unwise agreements to repay dischargeable debts. *In re Martin,* 761 F.2d 1163, 1168 (9th Cir.1985); *In re Fernandez–Lopez,* 37 B.R. 664, 667 n. 1 (9th Cir. BAP 1984); *Bowling, supra,* 116 B.R. at 664. Because of the danger that creditors may coerce debtors into undesirable reaffirmation agreements, they are not favored under the Bankruptcy Code and strict compliance with the specific terms in Section 524 is mandatory. *In re Artzt,* 145 B.R. 866, 868 (E.Tex.1992); *In re Petersen,* 110 B.R. 946, 949 (Colo.1990); *In re Gardner,* 57 B.R. 609, 611 (Me.1986). A reaffirmation agreement which does not comply fully with Section 524 is void and unenforceable. *Artzt, supra,* 145 B.R. at 868.

■ The Bank concedes that the provisions of Section 524(c) and (d) were not complied with. The Bank contends, however, that the Second Guaranty was not a promise to repay a discharged debt, but rather a new promise in consideration for the Bank's promise to extend the terms of the loan to GAC. Since Section 727(b) discharges only those debts that "arose before the date of the order for relief," the Bank argues that the Second Guaranty is not dischargeable because it arose after the order for relief was entered.

We disagree. The term "debt" is defined in Section 101(12) as "liability on a claim." "Claim," in turn, is defined in Section 101(5) as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Congress intended in Section 101(5) to incorporate the broadest available definition of claim. *In re Irizarry,* 171 B.R. 874, 878 (9th Cir. BAP 1994). The debt under the First Guaranty, as broadly defined in the Bankruptcy Code and in the written terms of the First Guaranty itself, was Getzoff's contingent liability to the Bank in the event GAC defaulted on any obligation "now or hereafter made" to the Bank. This debt was discharged in bankruptcy. The Second Guaranty obligated Getzoff to pay the Bank in the event GAC defaulted on the second note, which was merely an extension of the first note. Essentially, in executing the Second Guaranty, Getzoff assumed the continuing guaranty obligation that had been discharged in his bankruptcy case. Section 524(a) bars the Bank from trying to recover this debt without observing the requirements of Section 524(c) and (d).

Section 524(c) applies to agreements "between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable...." In substance, the Bank extended GAC's loan in consideration for Getzoff's promise to guaranty the loan. Since the consideration for the loan extension was based on a discharged debt, Getzoff's continuing obligation to guarantee GAC's debt, the Second Guaranty is subject to the requirements of Section 524(c).

Although there is little case law in the Ninth Circuit concerning whether a postpetition obligation is a new debt or an attempted reaffirmation of a discharged debt, cases outside this circuit have invalidated various types of postpetition debts as violating Section 524(c) and (d). *See Artzt, supra,* 145 B.R. at 868; *Van Meter v. American State Bank,* 89 B.R. 32 (W.D.Ark.1988); *Matter of Gilliland,* 62 B.R. 587 (Neb.1986); *Gardner, supra,* 57 B.R. at 611.

The courts in *Heirholzer, supra,* and *Petersen, supra,* upheld the validity of the post-petition debts at issue in those cases. The Bank maintains that the Panel should follow those cases. The Bank claims that the Second Guaranty was not a mere restatement of the First Guaranty, because it was given in consideration for an extension of the Bank's loan to GAC. The court in *Heirholzer* found "the pivotal factor which serves to establish a valid post discharge contract is the existence of some separate consideration for the subsequent agreement." 170 B.R. at 940. The bankruptcy court in this case found that the Second Guaranty was supported by new consideration from the Bank. Section 524 references the consideration given by the debtor, not the lender. Under Section 524(c), if the debtor's consideration is based in whole or in part on a discharged debt, then a reaffirmation agreement must be filed with the court. The fact that the Bank gave new consideration in exchange for the Second Guaranty does not change the fact that the consideration given by Getzoff was his promise to honor a discharged debt, the First Guaranty. Furthermore, the decision in *Heirholzer* also rested on the ground that the parties "executed a completely new set of paperwork to initiate their subsequent agreement." 170 B.R. at 941. In the instant case, the same forms were used for both the First Guaranty and the Second Guaranty.

The Bank contends that Getzoff is a sophisticated accountant and businessman who does not need the protections of Section 524. This reasoning was used by the court in *Petersen.* The court noted that the debtor did not need protection from an over-reaching creditor, since the debtor was a sophisticated, experienced businessman who knowingly and willingly entered into the postpetition agreement with the assistance of counsel. The court refused to let the debtor use Section 524(c) "as a sword against the Creditor rather than the shield that was intended." 110 B.R. at 950. Although this might be good policy, Section 524 does not state that its application is limited to unsophisticated debtors. Applying Section 524 only to unsophisticated debtors would exceed judicial authority. Whether a debtor was coerced or pressured by a creditor is immaterial, as no reaffirmation is enforceable unless it is made in compliance with Section 524(c) and (d). *Bowling, supra,* 116 B.R. at 664; *Gardner, supra,* 57 B.R. at 611.

## V

## CONCLUSION

The Second Guaranty, a reaffirmation of the First Guaranty, was not made in compliance with the requirements for reaffirming a discharged debt under Section 524(c) and (d). The summary judgment in favor of the Debtor is therefore **AFFIRMED.**